Filed 9/20/16  W.M. v. S.F. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| W. M.,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S. F.,<br><br>    Defendant and Appellant. | G050068<br><br>(Super. Ct. No. 98P001103)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Appeal dismissed in part as moot; remaining orders affirmed.

S.F., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Dickens wrote about a fictional case, *Jarndyce v. Jarndyce*, in which the legal fees incurred fighting over an inheritance completely ate up the inheritance, leaving the parties nothing. This unhappy and frankly tragic family law custody and visitation case is sadly similar. Instead of an inheritance, what was used up in years of litigation was the possibility a daughter might have developed a positive relationship with her mother during the daughter's childhood. Now it is too late. The daughter turned 18 during the pendency of this appeal. We address only the legal issues, which have now also been used up.

The case began in November 1998, when W.M. (Father), filed a paternity action against S.F. (Mother). At the time the action was filed, the child was barely six months old. As often happens in paternity cases, Mother was initially awarded physical custody while Father was awarded visitation rights.

But the case took an unusual turn in 2003. Mother made accusations of serious, indeed horrific, child sexual abuse against Father. The trial court had an evaluation performed by a psychologist, Dr. David Mann (see Evid. Code, § 730), who determined the accusations were unfounded. However, beyond just being unfounded, Dr. Mann concluded Mother's strong belief that Father had molested the child *itself* posed a danger of emotional damage to the child.[1] The trial court responded by giving legal and physical custody to Father.

Mother might have appealed from the 2003 ruling that changed custody based on Dr. Mann's report, and if she could show his conclusions were unsupported (say, for example, by establishing that Dr. Mann had not considered all the evidence), any

---

[1] The report opined that Mother presented "many of the elements of Munchausen by Proxy syndrome." We must hasten to add in this regard that there has never been any suggestion that Mother herself would ever *physically* harm the child in order to be the rescuing caregiver, which is the classic Munchausen by Proxy situation. Rather, the theory was that Mother's preoccupation with the belief her child had been molested would lead Mother to continually insist to the child that she had indeed been molested, posing the danger she might come to believe in the molestation as a matter of sheer pressure from her mother, even if the molestation never really happened.

2

injustice might have been corrected *then*. But Mother took no appeal in 2003. Rather, she spent the next 11 years litigating in the trial court trying to undo the 2003 order. She never wavered in her belief that her daughter had indeed been molested by Father and that the psychologist's evaluation was incorrect. But neither did she appeal from the 2003 ruling that changed custody, or any of the numerous adverse orders made against her since 2003. She did that in the spring of 2014.

On April 29, 2014, Mother filed a notice of appeal from two minute orders, entered February 28, 2014, and March 28, 2014, respectively. Most of the rulings in these two orders centered on the issues of custody and visitation: Mother wanted the trial court to order the child, now living in Georgia, returned to California on the theory that Father's relatively recent moves from California to Alabama and then from Alabama to Georgia were illegal – even though Mother had no visitation rights at the time. That request was denied. Mother also wanted the trial court to order a plan of reunification between Mother and child. That request was denied. Mother asked the court to unseal the transcript of a telephone call made by the trial judge on May 22, 2012, as part of a court hearing exploring the possibility of reunification between Mother and child. That request was denied, the trial judge determining that Mother would use the transcript to "get back" at the child. And Mother objected to the five-year renewal of a domestic violence restraining order obtained by Father, on the ground the application had only been served on her by mail, which, she claimed, was not proper service. The trial court determined the application was properly served and renewed the restraining order.

Then, in May 2016, the child turned 18. Upon her reaching the age of majority, the family courts lost the legal authority to order the child to visit her mother, reunify with her, or have anything else to do with her. Thus, even if we were to find Mother's arguments on appeal persuasive, we could not grant Mother any relief on the "move away," custody, visitation and reunification issues. (See *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 594 ["the court had no authority to issue a visitation order

3

regarding Poomi after he reached the age of majority"]; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419 ["A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire which prevent the appellate court from granting any effectual relief."].) In a word, this court can make no order that would give Mother what she desires by way of her appeal as regards custody, visitation or reunification. We – as has the trial court – have lost the legal authority to tell the child to do anything in regard to Mother's quest for visitation, reunification or custody. We therefore have no choice but to dismiss Mother's appeal from the minute orders of February 28, 2014, and March 28, 2014, to the degree they challenge the trial court's determinations regarding those issues.

Likewise, since the move-away issue is only relevant because it affects the possibility of custody, visitation and reunification, we must dismiss the appeal as moot in regard to that issue as well.

The same goes for Mother's challenge in regard to the telephone conversation between the trial judge and the child on May 22, 2012, but the mootness analysis there requires a little more explication. The conversation took place as part of a court hearing involving Mother's then-pending request to have the court implement a reunification plan between Mother and child. The conversation was on the record, but Mother was not present in the courtroom. The child was in the office of her high school guidance counselor. Father was not present. The gravamen of the conversation (as reported by the trial judge himself) was that he made a pitch to the child to get her interested in reunification with Mother, but the child was only willing to "think about it." The transcript of the conversation was sealed. At the time of the conversation, both parents had agreed to the court speaking in camera with the child and Mother made no objection to either the ex parte nature of the conversation or the sealing of the transcript.

Subsequently however, Mother requested the unsealing of the transcript. That request was denied. The trial court wrote in its minute order: "It [the unsealed

4

transcript] would be used to get back at the child, as child said she is not ready for a visit with Respondent/Mother. This information would be a great harm to [the child]. Why put [the child] in this position? This war is between the parents and the war should remain with Petitioner and Respondent."

On appeal, Mother contends two things in regard to the sealed telephone conservation: First, that the trial court denied her due process by refusing to allow her to cross-examine her daughter ("*cross-examine*" is the word Mother uses in her opening brief). Second, Mother contends the trial court should have unsealed the transcript so she could attack the judge's tentative statement of decision denying Mother reunification or visitation. Since the only prejudice Mother claims from the sealing of the transcript pertains to her ability to challenge the trial court's orders on custody, visitation and reunification, we are forced to conclude the transcript issue also became moot when the child turned 18.[2]

One issue, however, remains and is not moot: The trial court's renewal of the domestic violence restraining order on February 28, 2014. The order was renewed for five years, and thus prevents Mother from contacting the child for another three years. It is important to note, preliminarily, that Mother presents no argument that the order is not supported by substantial evidence. Having immersed ourselves in the substantial record on appeal – a record that spans 16 years – Mother is correct not to make that argument.

What Mother *does* argue is that the application to renew the domestic violence restraining order (one was already in place from 2010) was invalid because she was not properly served. Mother does not deny receiving the application via certified

---

[2]     For what it is worth, we will observe that the statute on which Mother relies to argue the court erred in not allowing her to be present during the call (and despite Mother's acquiescence at the time), Family Code section 7892, does not apply to this case (all further statutory references are to the Family Code). Section 7892 only applies to proceedings involving the *formal termination of parental rights*, pursuant to sections 7800 et seq. The statute that comes before section 7892, section 7891, requires the solicitation of a child's "feelings and thoughts" on the topic of the termination of parental rights before any such formal termination. Since this was not a termination-of-parental rights proceeding, section 7892 did not require the trial court to assure Mother and Father's presence during the conversation.

5

mail in October 2013, and we note the record contains the postal receipt of her signature obtained when the mail was delivered. Rather, she contends the trial court had no personal jurisdiction to file the subsequently renewed restraining order because mailed service is statutorily barred. Her authority is section 243.

Section 243, however, did not apply to Father's application to renew the domestic violence restraining order. Similar to Mother's argument on the telephone conversation,[3] Mother's invocation of section 243 is taken out of context and so her argument is unpersuasive. Section 243 is one of a series of statutes in the Family Code (specifically §§ 240-246 inclusive) that govern the issuance of *temporary* restraining orders at the *beginning* of a family law case. (§ 240, 242.) In such situations, naturally, there is a requirement of personal service of such temporary restraining orders (see § 243), since the person who is the object of the order might not even know at that point that he or she is subject to a restraining order. Put another way, at the beginning of a case when a family law court issues a temporary restraining order, personal jurisdiction has yet to be established, so personal service is necessary.

The renewal in this case, however, is a far cry from a temporary order issued at the beginning of a case. It is evident from her argument that Mother misunderstands the law of personal jurisdiction. She has been subject to the personal jurisdiction of the family court since 1998 when there was no doubt she was properly served with the summons and complaint that began this case. But beyond that, Mother voluntarily consented to the court's personal jurisdiction every time she requested affirmative relief of the trial court. (See *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 ["a party who seeks relief on any basis other than a motion to quash for lack of personal jurisdiction will be deemed to have made a general appearance and waived all

---

[3]      See footnote 2, *ante*, where we explain that Mother relied on a statute in regard to the court's telephone call to the child that does not apply to this case at all.

6

objections to defects in service, process, or personal jurisdiction"].)  And those times have been numerous indeed.

The appeal is dismissed as moot insofar as it pertains to issues of custody, visitation, reunification, move away and the telephone conversation and sealed transcript. The order filed February 28, 2014, renewing the domestic violence restraining order is affirmed.  Since Father did not file a respondent's brief, no appellate costs are awarded him.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.